Ruffin, C. J.
 

 The facts are so imperfectly stated, that we fear we shall be able to render much less assistance to the parties, towards ascertaining their rights, than they expected
 
 from
 
 their appeals. The report of the master is not before ns, except as certain facts of it appear in substance in the decree, nor does it appear whether Mr. Shipp had conveyed the High Shoals to the testator or not, nor whether ¿‘the funds” which the executors suggested they expected shortly to receive and wished to pay out without delay, were the proceeds of the personal or real property, nor does it appear, whether the judgments
 
 quando were rendered at
 
 the same or different periods, or whether the suits, in which they were rendered, were brought at the same or different periods. It is therefore impossible for the Court to say distinctly, whether there is., or is not, error in the several parts of the¿decree. We can only say, as to the first declaration made in the decree, upon the equality of the right of payment of the creditors by judgments
 
 quando,
 
 that it is certainly correct in respect to the proceeds of the real estate,
 
 *263
 
 as we hold that to be equitable assets; and may be correct and probably is correct in respect to the personal estate, becanse no lact is stated upon which one of those judgments creditors can be entitled to a preference over another. But as the Court cannot, for the last reason, see whether that part of the decree is correct, as between the parties in this cause, the Court can neither affirm nor reverse it, but must remand the case. Then the decree can be reheard on petition, and then the facts may be moie distinctly set forth, or by consent, the question may be sent up again, if the parties should still wish the opinion of this Court on it.
 

 We are of opinion, upon the second point, that Mr. Shipp is not entitled to a preference of payment out of the High Shoals property ; that is to say, upon the supposition, that he conveyed it to Burton in his life time. The question of a vendor’s equitable lien for the purchase money of land con-conveyed by him, we consider settled by the decision at this term of
 
 Womble v Battle & Blake.
 
 We know of but oneway, if any, in which that fund could be reached, so as to give Mr. Shipp the benefit of it, upon the ground of the purchase moneyhavinga preferable right of satisfaction before Burton’s general creditors. That is by considering the conveyance by Mr. Shipp to Mr. Burton — ifone was made — before the payment of the purchase money and without any personal security for it, except the purchaser’s own bond, as an act ofsuch gross negiigenceor inexcusable want of caution, as to amount to a breach oftrust in Mr. Shipp, and, of course, in Burton, who concurred in it by taking the conveyance. Therefore, probably, the creditors of Fullenwider, who are secured in the deed, or Fullenwider himself, (who has an interest that his debts should be paid as well as in the clear surplus) might, upon their bill against Shipp and Burton,-or by coming in before the Master, be allowedto follow the property; and if so, that would relieve Shipp to the amount of what they might get out of the property. That,- however, is the province of those persons, and Mr,-Shipp cannot claim it. Looking at Shipp merely as the vendor of land belonging to him, we think he has no lien, after a conveyance. It.
 
 *264
 
 js probable he did convey j else, he would not apply in the W£T ^aS- as fact no[: Stated, we can not assume it, and must, therefore, send the cause back undecided Up0tl t^js p0in t a]so.
 

 Upon the third point, the Court is of opinion that the decree is correct, as far as it affects the per sonal estate; but incorrect as far as respects the fund arising from the real estate, as the latter is assets in equity only, and is, therefore, applicable to all debts alike, or, in this case, to the debts in the order directed in the testator’s will. In the course of legal administration, and in that way the personal estate here is to be applied, a judgment of assets
 
 in futuro
 
 does not alter the priority between debts so as to give one of inferior dignity, on which such a judgment has been taken, a preference before a debt of higher dignity, not sued on. This was held in
 
 Roundlree
 
 v
 
 Sawyer,
 
 4 Dev. 44. An executor may, of course, pay such a judgment on asimple contract before notice of a bond debt, as he might do, if the simple contract debt had not been reduced to judgment. But the judgment
 
 quanclo
 
 does not fix the executor with assets, but assumes that he had fully administered up to the time of judgment; and, therefore, when called on to account upon a
 
 scire facias
 
 for assets thereafter come to hand, the executor may shew that there were none applicable to. that debt, because debts of higher dignity existed. But between debts of the same dignity, here being, originally, all specialties, we think the law is, that the diligent creditor shall be preferred. It seems to have been so considered by Lord Hardwick, in
 
 Ashby
 
 v
 
 Pocock,
 
 3 Atk. 308. Although the judgment is not absolute, yet the suit gives notice of the debt and the judgment ascertains it, and the executor would not be at liberty after suit to make a voluntary payment to a creditor in equal degree, who had not sued. Hence the bond outstanding could not protect the executor in a scire
 
 facias
 
 on the judgment; while to a suit on the bond, he might plead the prior suit on bond and judgment therefor. Such seems to be the understanding of the text-writers upon this question. Wms. Exrs. 659, Ram. on Assets 290, and the authorities cited by him.
 

 
 *265
 
 We have already said, that we hold the real estate to be equitable assets, and that the decree was wrong in them legal. Under the act of 1789, as we held in
 
 Dunn
 
 v Keeling, 2 Dev. 283, the land would be undoubtedly legal assets. For that act makes all devises void against creditors, as the first section of the St. 3 & 4, W. & M. C. 14, had in England done; but it did not take out of the operation of its enactment a devise in trust or charge for the payment of debts, as by the provision in the fourth section of the English Statute had been done. It followed necessarily that all devises were here alike void against creditors, and they might proceed against the devisees in actions at law for their debts. It might seem strange to hold, that a devise for the very purpose of paying debts should be held to be fraudulent as to the creditors. So it would be, if it were declared fraudulent and void upon the intent of the testator in making the gift, as a deed by a debtor is by the St. 13 Eliz. when made with the intent to defeat creditors. But the acts of 1789, and of 3 & 4 W. & M do not make devises void upon the intent, as a fact to be found by the court or jury, but upon the fact of the devise, since, at common law, that defeated the creditor, with whatever intent it might have been made. Therefore, under these acts, lands devised to one for his own benefit, are clearly liable to the testator’s creditors, although, in the same will the testator made, otherwise, an ample provision for the payment of his debts. The question of intent therefore was immaterial; and the general enactment made a devise even for payment of debts void. But the English statute, by that proviso, took such a devise out of the operation of the previous clause; and consequently left it, as if the statute had not been passed. Therefore in England a creditor could not sue such a devisee. If he did, the latter would plead that the devise to him was in trust for payment of debts; which, being a protection by statute, the court was obliged to take notice of and sustain. There, therefore, the creditor was obliged to go into equity' and obtain satisfaction upon the footing of the trust for him
 
 *266
 
 created in the will. By omitting-that proviso in our act, all was reversed here. For when a creditor sued the devisee here, it would be no answer to the action to plead, that was a devisee in trust for others, although those others might be honest creditors. The creditor would reply, there is nothing to help you in the statute, which, for my purpose, has made the gift to you void. We were obliged then to hold lands thus devised to be legal real assets. It would seem, that the Legislature could mean nothing less by omitting the proviso of the act of W. & M.; which might have been from an intention to prevent debtors from creating preferences by their wills, and to make the land liable to debts according to legal priorities. That was the necessary construction of the act; and the court could not avoid it, though not insensible of the great confusion and immense losses that would almost certainly arise out of it. For it might defeat the most reasonable provisions for the testator’s family, and for the payment of his debt. For example, an heir or devisee cannot, after process sued, alien; so that one obstinate creditor, by bringing suit, might prevent a sale for a fair price, and sacrifice a large estate by a sale for cash on execution, for a trifling debt. And, at all events, instead oi selling the land by the executor or trustee and applying the whole proceeds to the satisfaction of creditors, in nine cases out of ten, more of it would be sunk in costs of suits at law than came to the hands of the creditors themselves. Then as to the preferences the debtors may create, that raises no objection. It cannot be a fraud in a person to devote his property to the payment of just debts, although he may not have enough to pay all his creditors. Upon that ground preferences by deed are upheld. But if preferences be wrong, they are less likely to be made by will than by deed. Men may expect favors from particular creditors for whose benefit they make deeds ; but they are past that before their wills can go into effect, and, therefore, will not be much inclined to make unjust preferences by will, or, indeed, to make any. It is almost universal, when lands are devised intrust
 
 *267
 
 for creditors, that it is for all creditors; though, sometimes, certainly, it is otherwise, and perhaps, ought to be. It is highly probable that views of this kind, when the subject was brought to the notice of the Legislature by the case of
 
 Dunn
 
 v
 
 Keeling,
 
 decided in June, 1830, induced that body, in the act of that year, ch. 36, to enact here, in substance, the proviso contained in the St. 3 & 4, W. & M. It is now found in Rev. St. c. 43, s. 15, and provides that “nothing in that act contained shall impair or in any way affect the right of any person to whom land may be devised in trust, or to whom power to sell land shall be given, by any will, for the purpose of paying the debts of the testator, to dispose of the same,
 
 in order to carry into effect the intention of the testator.”
 

 The effect of that provision undoubtedly is, to sustain against general creditors that devise for the sake of the purpose of it, namely, the trust for creditors, as far as it may be necessary for that purpose. Beyond that, perhaps, thexesidueofthelandor its proceeds might be liable, as at law. But to the extent that the will raises a trust for creditors, clearly the land is no longer liable in an action at law, under the statute of fraudulent devises, but can be reached only in equity, upon the footing of the trust. Consequently, it is equitable assets; the distinction between them and legal assets being, that the one may be reached at law, and the other only in equity. It was formerly doubted in England, whether, in some cases of devises or powers to executors to sell for payment of debts, the proceeds were not legal assets. But since the case of
 
 Silk
 
 v
 
 Prime,
 
 1 Bro. c. C. 138, it has been considered as settled 'in the English Court of Chancery, that in every case the assets are equitable. And recently the same doctrine has been held at law in the cases of
 
 Clay
 
 v
 
 Willis,
 
 1 B. &. C. 364, and
 
 Barker
 
 v
 
 May,
 
 9 B. & C. 489.
 

 What effect this will have on the rights of the parties to this suit we cannot say, as the facts are not stated, so as to enable us to see the application of the rule. Therefore, we can only declare, that the lands devised in the testator’s will
 
 *268
 
 not legal assets, but equitable assets; as to winch the §eneraJ rule ,^iaí are
 
 to ^e
 
 applied
 
 to
 
 the payment of the debts, as and in the order the will directs, and that, -|36 not a sufficiency to pay all the debts of a particular class, they are to be applied to all the debts of that class
 
 .pari
 
 passu, whether due by bond, simple contract, or otherwise — saving, however, the preferences that may arise from specific liens for any particular debts.
 

 Per Curiam, Ordered to be certified accordingly.